okay your honor I represent Rosalba in this case and I took this case at the beginning and we've outlined our arguments in our opening brief and in that opening brief we outlined why we thought that she had met her prima facia case for why she was a victim of discrimination and I outlined that in the opening brief and basically we disagreed with Judge Lavnik in that we we believe that there were outstanding issues of fact that precluded summary judgment in employment cases they're they're a little bit like if you listen to the lab they're a little bit like family law cases they're a little bit they're human relationships so there's always going to be it needs to go to contested it disputed issues of material fact and right so that you know there's always going to be able to if people are together for years it seems to me to be undisputed that this all started when your client had an accident while she was working and suffered a traumatic injury and by everyone's it seems to be undisputed that your client could not do the job that she was doing previously she had been a good employee before that she was performing at the necessary levels after this and it seems to me that your client agrees that she can't do what she could before is that correct that's correct your honor so when you're talking about the discrimination what is your what's your basis for that well the debris to be honest with you your honor we felt that the issues were outlined in our opening brief and I had a conversation with this with my clients on this and and I'm partially responsible for this when we when we submitted our opening brief I took it over from another attorney and I felt that we had strong arguments the disputed issues we had outlined in our opening brief and I also felt that my understanding was the judge lasnik had judge lasnik had gone ahead and ruled on the merits even though he didn't accept even though he didn't initially grant the extension of time for submitting the the evidence mr. scannell mr. scannell and then what happened was mr. scannell judge Hawkins has a question of you okay sir can you hear me yes I can hear you your honor okay would you be so kind as to answer judge Callahan's question which was simply put what is your client's prima facie case of discrimination I don't want to hear about the brief I don't want to hear about how you got this case I want in a sentence or two you to answer her question okay that's what I was trying to do your honor the problem that we're having in this case is we don't have the evidence to meet their prima facie case right now because I was under the understanding that the judge had ruled on the on the evidence that we had submitted late and and we were preparing the argument based on that evidence when we received the response brief I discovered that in a footnote judge lasnik had not allowed the extension of time and even though he considered it in the his argument in his ruling he very clearly in a footnote that I hadn't discovered before ruled that he was not with that I told my clients on the on the reply brief I said I can't defend this case any longer because we don't have any evidence based on their initial response and there was no notice of appeal filed on the there was no notice of appeal filed on the denial of the extension of time and so my client instructed me to simply go in there on the briefing that we've had and that's what I'm doing and quite honestly your honor if we're not granted that extension of time we didn't have any evidence that could have defeated summary judgment I proceeded on that and it was my fault I proceeded under the assumption that there was enough we had a good argument if he hadn't considered our evidence but I misread his order because I thought he had considered our evidence and he was very clear in a footnote and saying that he was not granting the extension of time and there was no notice of appeal filed on that you can't follow notice of appeal just based on a denial of a motion for extension of time because that's not a final disposition right but it should have been included in the things of the orders that we that we were filing and there was no notice of appeal on the extension of time and without that we didn't have an argument for the final order in my view so let me ask you this if is there any any independent evidence in the record that supports Miss Mayorga's assertions that Caucasians applying for the same positions as Miss Mayorga received favorable treatment on account of their race yes we had if you statement you can't you know there's an argument you can't just make a conclusionary statement and there were males that got it but it looked like she wasn't qualified for the position so that's so right we had offering that for pretext if we got to pretext yeah I understand what you're saying Your Honor if we had gotten the extension of time which we didn't or excuse me if we had appealed the denial of the extension of time they did have in the record a comparator which the other side has claimed for various reasons evidentiary wise didn't apply and it was in the process of addressing that that I discovered we didn't have any evidence but if we did have a comparator but I never got around to I decided it would be fruitless to go and address their evidentiary questions when it wasn't even before the court yet but yes there was there was a comparator that we had in the record unfortunately the record it never got entered into the record because he denied the extension of time was that that mr. Barr that who you're referring to yeah I think it was yeah well would you like to reserve time for rebuttal see what the other side said and then respond to that yeah if the other side wants to you you're asking if you want to cede the time to the other side right now no you have you can you can have all the time on rebuttal you can hear what they have to say and you can respond yes rebuttal I'm okay I'll do that then you know it's up to you I'm not I'm just saying you you have 15 minutes total if you want to reserve the balance right now let's let's reserve for that your honor all right then we'll hear from the other side and then you have you'll have six minutes and 42 seconds on rebuttal okay may I please the court I'm Scott Barbara assistant attorney general representing the state of Washington and the individual defendants in this case I was actually quite surprised to just hear from counsel for Ms. Mayorga two things a clear acknowledgments that she wasn't able to do the job and a clear evidence or clear statement that they do not have a motion for an extension of time that was denied it was a motion that was positive but nevertheless I in the comments that were just made several times it was referred to as a motion for extension of time that was denied there was no motion for an extension of time in the issue in this case related to the summary judgment the summary judgment that was filed had a response timely filed in this case including the declaration of Ms. Mayorga the motion that was denied was to after the defense reply was filed file a brand new completely different response to the motion and the district court denied that motion because they had already responded and there was no indication that they needed additional time where at the time the response was filed that they were incapable of responding within the rules but nevertheless the court did review their supplemental response in order to see whether there were any additional facts that caused concern for the court and there were not if the court analyzed the court found there was no prime if they should case did the court go through the additional analysis and say even assuming there's a pretext so what did the court heard the court just stopped at prima facie I believe your honor that that the order stopped at prima facie but did talk about the issue of pretext and in this case the undisputed evidence from Ms. Mayorga is that she was not capable of doing her pre-injury job which means that any claim for disability discrimination fails with regard to her position of pre-injury there it is undisputed that the vacancy searches that were conducted during the disability reassignment were limited by Ms. Mayorga and failed to identify any vacant funded positions for which she was qualified or could be accommodated which means there was no discrimination in the context of the disability reassignment and in the context something about she identified in her brief eight specific examples of positions she said she was qualified for but were filled by Caucasians instead why doesn't this create a jury question as whether she was discriminated against based on race and national origin reason for that your honor is that there's many there's mayorga lacks foundation for the statements she's made a statement to the made by someone that is independent of national origin or ethnicity in in fact standard questions on ethnicity talk about Caucasian Hispanic for example non-hispanic Caucasian is too broad a term and Ms. Mayorga has no demographic information I that would support her determination that people who were Caucasian filled the positions excuse me didn't she file a table and I'm referring to ER volume one at pages seven through ten didn't she say here's a table with a list of positions that I am qualified for that were not offered to me but filled by other people begin with your honor the table is nothing more than Ms. Mayorga's assertion for which she lacks foundation there was no discovery done by Ms. Mayorga she did not get any demographic information from DSHS she did not identify when those positions were filled relative to her own availability for reassignment let's keep in mind that from 2013 until early 2016 DSHS was attempting to accommodate her within her position of pre-injury so any position that was open and filled during that period of time is not one that she would have been considered for in terms of reassignment the vacancy reassignment search happened after it was determined based on medical information and with Ms. Mayorga's agreement that she was not able to perform her pre-injury position and therefore the reassignment process looked at situ cases that are positions that were vacant and funded did not carry a caseload and were not heavy in terms of multitasking which was a significant problem for Ms. Mayorga as a result of the traumatic brain injury so without the information from DSHS demonstrating when the positions became available relative to Ms. Mayorga's disability reassignment the demographic information about who filled them whether in fact Ms. Mayorga would have been qualified is an evidentiary issue it's not enough for her to simply say I'm qualified she has to be able to demonstrate that the position is one that she was in fact qualified for her table alone is insufficient evidentiary evidentiary to create an issue of fact did your did the state of Washington respond to this table we did not your honor be in the papers we did not your honor other than to object to the evidence it was submitted in response to summary judgment and so we were on reply and and the factual record the evidentiary record created during discovery did not get at any comparators whatsoever so Mr. Mayorga asserts that the state could have modified her social services specialist three positions so that she would not have had to carry any cases and that she could have continued to perform that role under those circumstances could the position have been modified was any modification offered modification that you've just suggested your honor is absolutely not one that can be created it is an essential function of the per pre-injury position that she carry a caseload her job as a social services specialist 3 pre-injury pre-assignment process was to carry cases for children who were already in dependencies she was responsible for visiting them monthly making sure that they were getting all of the support they needed medical educational food clothes she was required to make court appearances she was where she was asking for the natural helper on this job that is one of the things that they have suggested your honor but the natural helper is a reference to something that was suggested and is nowhere else in the record there is no indication of what a natural helper is but more importantly Ms. Mayorga acknowledges that her supervisor Ruth Haggerty was in fact performing the role of natural helper in that Ms. Haggerty was the person who could best accommodate her granted her leave allowed her to have a graduated return to work in terms of hours allowed her to have a graduated return to work in terms of caseload allowed her to not drive at any time she felt like she was not comfortable driving and granted her considerable leave. Ms. Mayorga used approximately 3,500 hours of leave between her accident and her disability separation. DSHS did everything they possibly could have to support Ms. Mayorga in her pre-injury position before they moved to reassignment and in her looks for well when she claims national origin discrimination the only thing the only evidence she points to is that she didn't get hired into the job that she believed she believed subjectively she was qualified to do having never done it before and that's in ER 4 at pages 90, 94, 95, 108, 109, 110 those are all deposition testimony from Ms. Mayorga. How large is this group? How many employees were in this group? If by in this group your honor you mean the Mount Vernon office where Ms. Mayorga worked that is not in the record. DSHS is a very large organization and in fact there is evidence in the record that had Ms. Mayorga not voluntarily limited the scope of the search DSHS would have looked or would have cast a statewide net looking for vacancy positions into which she could have been accommodated. But you have a position at Spokane but she would have to move for that right? How does that factor? So keeping in mind your honor that the disability re-accommodation is an interactive process there was a position identified in Spokane that was offered to her there was not an expectation that she would necessarily take it and she didn't. It was beyond the scope of what she was asking for anyway because she limited it to the Mount Vernon office and she limited it to a single administration within DSHS that being the Children's Administration and she only did that after she was told she couldn't limit it to a single position. A relative search specialist position which although she believes she was qualified the undisputed evidence in the record is that she was not qualified to handle it for the very reasons that she couldn't do her previous job. Her traumatic brain injury meant that the skills she needed including multitasking which is something she couldn't do was an absolutely essential part of the relative search position. So in any situation where DSHS identified a position Ms. Mayorga would still have to be willing to go into it but if she declined a position that met the search criteria then that was her choice and if she declined a position she could also have been reassigned. Excuse me she could have been disability separated but that didn't happen with the Spokane position because it wasn't within the area she established. Your briefing seems to throw in that Ms. Mayorga was she was the one that caused the accident that caused her injury. Is that is that relevant to any of this? It is not relevant to any of this your honor it's just a fact from the beginning of the accident. All right so you're not claiming because she caused the accident that she has any less rights. She had an Absolutely not and the fact that it's a work-related accident also has no bearing on whether she needed to be accommodated or not. It is simply a fact in this case that it is a work-related injury and at least as of the time of her deposition she continues to receive workers compensation benefits despite her disability separation. Do either of my colleagues have any additional questions? No. Yeah you're afraid to use your time but we don't have any additional questions that's up to you. Sorry the light just turned off in my room. You probably have to move around move your hands or something. Technology. Great when it works and not so great when it doesn't work. The motion sensor is on a wall that I keep my waving doesn't do anything for. I apologize for that. I take counsel what you want to say is you urge us to affirm. I do your Thank you. All right we'll go back to appellate counsel Mr. Scanal. You want to yeah I'd like to respond to some of the stuff he said. Go ahead. You know they have this and we've laid this out in our opening brief but they've laid out this step-by-step process in which they claim they did everything that they could and there was no discrimination that was involved okay and that simply isn't the case because you have to look at the entire picture here not just whether they passed each individual step that they declared to be the rules but whether the process itself was discriminatory and we're saying it was and there's several issues of fact very important issues of fact that should lead this court if it did consider all the evidence that would say yes there were there was a trialable issue to begin with they started their their search before before they even got rid of her or did anything they suddenly come up with the rule that says we don't need Spanish-speaking people to be qualified for this position and as we pointed out Rosa was one of the few in the state that did speak Spanish so right off the bat you're looking at what is their intent here what is the intent of this process is it to hire the most qualified person or are we going to start changing the rules in midstream here so we can flood the gate with more applicants so that she won't be able to get it okay regardless that if you want to state that they retaliated against her for making that statement she still has to be able to show she can do the job and it seems that she conceded she has these limitations this job does require to multitask it does require holding and having a caseload so how does she get over that I mean hiring a helper to do the job for you the one doesn't require that you know if hiring you're required to accommodate but if accommodation hire someone to do the job for you that's not accommodation you still have to be able to show you're qualified how could she do the job well what we're saying that the discrimination occurred your honor is that there were other jobs that she was qualified for it's true that she didn't qualify for the original job but we also showed during during this job search that she did her own job search and found positions within the department which she could have accomplished and yet they didn't want to throw those jobs into the these other jobs that she qualified for were a valid accommodation and then they claimed that you know other people were more qualified or whatever so the issue here wasn't whether she was still qualified for original job but they were supposed to have tried to accommodate her to see if there were jobs that were available and we're saying the fact that they artificially limited the search over a very short period of time for example they knew that you wouldn't leave her family and travel several hundred miles to Spokane but then they they set up a process where oh well let's quickly let's quickly look for a few positions here oh she doesn't have qualified for the two that we named and so therefore it's over and that occurred over a fairly short period of time. Counsel! Counsel! Can you hear me? No I didn't. Can you hear me now? I can hear you now I didn't know you interrupted me I'm sorry. Well it's hard to get a word in edgewise okay but I have a question that it's least important to one of the judges on your case and the question is is an employee in your client's circumstance entitled to define the kind of job that her employer should be looking for her to fill? I think that I think that that may be an employer decision your honor but if the employer is artificially limiting that that becomes a question of fact if you have evidences that's out there that indicates like we said opening it up to non speak Spanish-speaking people then I think that if they they limit they limit it to a very short period of time to the and come up with alternatives then that in itself can be viewed discriminatory so like I say you're they have the right to define the process and if my client chooses a job that that management decides isn't in the mix and it's a legitimate a decision that management made that way then yeah you're right management has the right to limit the job search but what we're saying here is their choice to limit it to a short period of time and exclude you know not allow her to concentrate that search within the geographical area that she wanted leaves open a question of fact as to whether they have discriminatory intent or not. Does she object to the search criteria used for the two searches that the department used? I didn't quite catch that. I think you were saying she objects to the search that that she was allowed? I'm asking did she object to the department's search criteria on the two searches that the department made on her behalf? Is there anything in the record showing she objected to the scope of those searches? I'm sorry I can't answer that question your honor. I'm not that familiar with the record on that particular point. I thought she did but I can't be absolutely sure. We'll check the record on that. Okay well we've used all of your time. Let me make sure my colleagues don't have any additional questions. We don't have any additional questions so if you want to use 30 seconds you're already in overtime but use 30 seconds to wrap up. I don't have anything more to say your honor. All right thank you both for your argument in this matter. This matter will stand submitted. The court will take a short recess for 10 minutes and then we'll hear the last case that's on for argument. Thank you. Okay thank you.
judges: Gilman, Hawkins, Callahan